H. T. Ellett, Special Judge,
delivered the opinion of the Court.
Williams, claiming to be a partner in the firms of E. B. Roberts & Bro., and T. H. Boswell, filed this bill to set aside a sale of all the partnership property, made without his knowledge or consent, and while he was present in the store, by E. B. Roberts and D. H. Roberts, two of his co-partners, to Boswell & Graham. Boswell was a partner in that portion of the. general business which was carried on in his name. The bill prayed for a dissolution of the partnerships, and the liquidation of. their debts, and distribution of the surplus if any, under the direction of the Court of Chancery.
The defendants all deny that Williams was a partner, and Boswell & Graham further claim to be purchasers in good faith, without notice, and for a valuable consideration.
The questions are:
First, Whether Williams was a partner.
Second, Whether the sale was valid against him.
The testimony is very voluminous, arid in some respects conflicting. On a careful review of it, however, we have had no difficulty in reaching a satisfactory conclusion.
*495 Eirst, As to the question of partnership.
We have no doubt that Williams and Irwin continued to be co-partners up to the 30th of August, 1864, notwithstanding the ostensible sale by Williams to Irwin in the preceding July, and notwithstanding the bill of sale to E. B. Roberts & Bro., was signed by Irwin alone, and was witnessed by Williams. This is clearly shown by the testimony of . Irwin, and by the contents of the conditional note given by E. B. Roberts & Bro., to Irwin and Williams on that sale.
We are equally well convinced, that, on the 30th of August, 1864, when Irwin conveyed to E. B. Roberts & Bro., the stock of goods of Irwin & Co., the said firm of E. B. Roberts & Bro., was composed of E. B. Roberts, D. H. Roberts, T. H. Williams, and Irwin, all equally interested as co-partners. That firm continued until about the middle of November when it was dissolved by the retirement of Irwin, and was succeeded by a new firm, under the. same name, of which E. B. Roberts, D. H. Roberts, and Williams, were the members. Shortly afterwards, this latter firm, added to their concern, a dry goods department, and associated Boswell as a partner in that branch alone. And these firms continued without further change> until the transaction which gave rise to this litigation.
The leading facts in support, of these propositions, are established by the testimony of Irwin, one of the partners, and Eussell, the book-keeper, the only witnesses who possessed the means of knowing all the facts; and they are confirmed and corroborated by the *496 statements of numerous other witnesses in regard to admissions, declarations and acts, totally incompatible with any other hypothesis than that of the existence of these partnerships as supposed. The character and standing of many of these witnesses, their number, the consistency and harmony of the facts detailed, their relation to the parties, and the nature of the evidence given, are all calculated to inspire confidence, and to justify acquiesence in the results to which their testimony points. The intrinsic probabilities arising from the undisputed facts of the transactions themselves, also furnish cogent reasons in favor of the same conclusions.
We abstain from going into greater detail, in the belief that it is unnecessary and unprofitable.
On the other hand, while the defendants’ proof, standing alone, would be quite sufficient to disprove the fact in controversy; yet when viewed in connection with. the other testimony in the cause, the great preponderance is on the opposite side. A motive is disclosed, in the dread of the then existing military government, and the desire to propitiate it, that may account for the efforts to conceal the connection of Williams with the firm of Irwin & Co., and that of Williams & Irwin, with the firm of E. B. Roberts & Bro., and furnishes a plausible explanation of some facts that might otherwise appear suspicious and unaccountable.
Whether this motive for suppressing the truth was creditable or otherwise, is not the question; nor is its sufficiency. It does not appear that Williams or *497 Irwin ever committed- or contemplated any act in opposition to the laws or policy of the United States; and the mere concealment of their business arrangements from the public authorities, did not necessarily involve a crime, or -work injury to others.
Second, As,to the validity of the sale.
The general rule in regard to sales of personal property, is caveat emptor; but this is not of universal application. There are conditions in which a purchaser in good faith, for value, without notice, may acquire a good title, although his vendor may have no real title or authority to sell.
But in cases of partnership, there is a joint ownership, with an unquestionable power in each partner, to sell all or any part of the personal property of the partnership, subject only to the qualification that such disposition must be in the usual course of the business.
The authorities do not seem to be entirely -agreed how far one partner, in the presence, and without, or against the consent of the other, can make an assignment of all the assets to trustees in trust for the payment of debts, or an absolute sale producing a dissolution of the partnership. The better opinion seems to be, that a general assignment for the benefit of creditors, cannot be made by one partner in the case supposed; nor unless other partners are absent, under circumstances justifying the inference of an intention to confide all the business to the management of the partner who remains: 1 Am. Lead. Cas., 427, 442; Parsons on Part., 166, and notes.
In Lassell vs. Tucker, 5 Sneed, 33, and -also in *498 Mynatt vs. McClure, 3 Head, 495, it appeared expressly that the assignments were made “in the absence” of the parties not joining in them; but that circumstance is not relied on in the opinion in either case, as a ground of the decision.
The present case does not require the expression of any definite opinion on this point; for if such a sale or assignment, made by one partner in the presence, and against the consent of his co-partner, (which is the case here,) can be upheld at all, slight circumstances will be sufficient to render such a transaction suspicious, and to fix on it the imputation of fraud: Anderson vs. Tompkins, 1 Brock., 461.
We are satisfied from the evidence in this cause, that Boswell, during the whole period of his connection with it, knew the fact that Williams was a partner in the firm of E. B. Roberts & Bro.; and it is well settled that notice to Boswell was, in law, notice also to Graham, his partner in the purchase.
Boswell and Graham, then, not only knew that Williams was a partner in the firms of E. B. Roberts & Bro., and T. H. Boswell, hut they also knew that the sale was made by E. B. and L. N. Roberts, to them, without the knowledge or consent of Williams, and with the intent and object to exclude the latter from the enjoyment of his interest in the property.
Under these circumstances, the sale was fraudulent and void as to Williams, and ought to be set aside. The decree of the Chancellor seems to be properly framed to secure the application of the property of each of the firms: first, to the payment of its- own *499 debts, and the overplus, if any, after satisfying the claims of all creditors, to such of the partners as may be entitled to it, according to their respective interests.
The decree is, therefore, affirmed, and the cause remanded for further proceeding in the court below.